LEIGHTON WESSEL ET AL., APPELLEES, V. HILLSDALE
ESTATES, INC, A NONPROFIT CORPORATION, ET AL.,
APPELLEES, IMPLEADED WITH AUSTIN REALTY CO.,
APPELLANT.

265 N. W. 2d 62

Filed May 10, 1978. No. 41522.

Pierson, Ackerman, Fitchett & Akin, for appellant and for appellee Hillsdale Estates, Inc.

Ginsburg, Rosenberg, Ginsburg & Krivosha and R. P. Cathcart, for appellees Wessel et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action for declaratory and injunctive relief by landowners in Hillsdale Estates, a platted subdivision in the city of Lincoln, on behalf of themselves and other homeowners, against Austin Realty Co. and Hillsdale Estates, Inc., its officers and directors. Defendant Austin Realty Co. appeals from an order of the District Court which enjoined defendants from proceeding with a plan to construct 40 townhouse units on Lot 19, Block 5, Hillsdale Es-

tates, and directed them to provide a reasonable area for park and recreation purposes. We affirm as modified.

Austin Realty Co. had replatted the area as Hillsdale Estates, 1st Addition. It will be referred to as Lot 19. The principal issue herein is whether the class represented by plaintiffs had acquired a vested right to the use of a reasonable portion of the real estate in question for park and recreational purposes.

On July 10, 1967, the Lincoln city council gave preliminary approval to Austin Realty Co. for construction and development of a community unit plan in the northeast section of the city. The city council approved special permit No. 383 on December 4, 1967, providing for construction of 162 units on the property. The property was platted and designated as Hillsdale Estates. The plat was approved by ordinance No. 9375, passed January 8, 1968.

Exhibit 28, introduced by the defendants, is a plat dated May 1967. It indicates Hillsdale Estates was divided into 122 lots for single-family dwellings, and one area with four 10-plexes, making a total of 162 dwelling units. The four 10-plexes on exhibit 28 were located in the western portion of Lot 19, on approximately 1½ acres. Lot 19 comprised approximately 4.35 acres. The 1½ acres was bounded on the east by a dead-end street and comprised an area of approximately 40 feet in width, the east 15 feet of which were marked "parking." The area to the east of the parking area appears to be outlined by trees or shrubs. This area, with the street and parking area, would comprise approximately 2.85 acres of Lot 19. The plat also shows a 30-foot walkway crossing the east 1½ acre-portion on which the four 10-plexes are indicated.

Exhibit 29, introduced by the defendants, indicates representations were made to the Buists, purchasers of a lot in Hillsdale Estates, that Lot 19 would be used for a private park. It also referred to multiple

units, which we interpret to be those shown on exhibit 28. It is dated March 22, 1968.

Lot 19 is located in the extreme northeast corner of Hillsdale Estates. It is an irregularly shaped piece of land, bounded on the west and south sides by 12 single-family dwellings. The walkway referred to connects Lot 19 with the street, which runs in front of the residences on the west side.

On January 23, 1968, Austin recorded protective covenants affecting all the lots in Hillsdale Estates. Those lots set aside for single-family dwellings are referred to as the "Properties," and Lot 19, is referred to as the "Commons." The document places several restrictions upon the use of the "Properties." Of importance herein are the provisions pertaining to the "Commons."

As a part of the preamble to the protective covenants, it is stated: "WHEREAS, Austin Realty Co. desires to create within the Commons parks, playgrounds, recreational areas and facilities, scenic areas, and such building, structures, improvements and personalty as may be incident thereto; * * *." It is further recited that a nonprofit corporation, known as Hillsdale Estates, Inc., has been created "for the purpose of enforcing the covenants and restrictions created and established against and upon the Properties and for the purpose of administering and maintaining the Commons." Articles of incorporation for Hillsdale Estates, Inc., were filed with the Secretary of State on January 17, 1968. Every property owner in Hillsdale Estates is a member of the corporation and is entitled to vote at the meetings.

Clause XIV of the protective covenants provides: "The Company (Austin) may retain legal title to the Commons until such time as the initial development thereof has been completed and may subdivide portions of the Commons into lots for the construction of multiple dwellings. Such multiple dwelling lots,

when subdivided, shall cease to be a part of the Commons; provided however, that any such subdivision shall be made so as to preserve and maintain the sidewalk access from the Properties to the Commons, as shown on the recorded plat of Hillsdale Estates."

Clause XVIII states: "Each member of the Corporation shall have the right to use and enjoy the Commons and shall have an easement over and upon the Commons for the use and enjoyment thereof, which shall be appurtenant to and shall pass with the interest requisite for membership held by such member."

Other provisions give the board of directors of Hillsdale Estates, Inc., the right, after the Commons has been conveyed to the corporation, to levy annual assessments of up to $50 against the members. Assessments for a greater amount, or special assessments for capital improvements, require approval of two-thirds of the members. The corporation is also granted the right to charge reasonable admission and other fees for use of the Commons. With member approval, all or part of the Commons may be dedicated or transferred to a public agency.

Clause XXIII provides the covenants shall run with the land and be binding for a period of 25 years, after which time they will be extended automatically for successive 10-year periods, unless terminated or modified by a vote of the property owners. Clause XXIV provides: "The enforcement of these covenants and restrictions shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any provision or provisions hereof. Such proceedings may be to restrain such violation, or to recover damages and, by the Corporation, may be to enforce any lien or obligation created hereby."

On June 9, 1969, the Lincoln city council granted special permit No. 465, permitting the number of

units to be increased to 170. In 1973, Austin applied for another special permit to amend the plan to provide for the construction of 40 townhouse units on Lot 19, and to reduce the amount of open area on the lot. This special permit was approved by the city council on January 29, 1973. On the same day, the city council considered and rejected an application by Leighton Wessel and Darrell E. Feit, plaintiffs herein, for the revocation of special permit No. 465.

On March 11, 1974, subsequent to the filing of the present action, the Lincoln city council accepted and approved a plat designated as Hillsdale Estates, 1st Addition. This is a replat of Lot 19, Hillsdale Estates, providing for the subdivision of 40 townhouse lots.

Plans for the development of Lot 19, changed several times over the years. As designated in exhibit 28 in 1967, 4 apartment buildings, each containing 10 living units, would be built on the western portion of the lot. The remaining land, comprising approximately 2.85 acres, would be a street and park area.

Several homeowners testified they were told by Austin salespeople when they purchased their lots there would be a park on Lot 19. Some were also informed the residents could decide whether they wanted to install tennis courts, a swimming pool, or other recreational facilities on the land.

Most purchasers were supplied with a brochure containing a copy of the original plat, with Lot 19 designated as "Community Unit Area" but showing nothing else.

A photographic reproduction of the billboards Austin used to sell the property was introduced into evidence. There were three billboards located on the area. On these billboards, Lot 19, was labeled as a "Community Unit Area." The billboard also stated that the development features a "private park" and a "recreation area."

Austin's 1969 plan provided for the construction of

four 12-plex apartments, together with 12 six-doored garages. This left only a small area on the western edge of the lot for a picnic area and another open area on the eastern edge designated as "community area." The total amount of the open space was, however, substantially reduced.

A townhouse plan, approved by the city council in 1973, provides a much smaller area of open land on the periphery of the building complex. In addition, the plan calls for laying a 50 by 80-foot concrete slab to be used for basketball, volleyball, and badminton.

Prior to the time the special permit for the townhouse plans was approved by the city, Austin held a meeting with area residents to explain the plan. In November 1972, it proposed an amendment to the protective covenants whereby all references to parks and recreation areas would be omitted. Membership in the corporation would be limited to owners of the multiple dwelling units and other homeowners would not be subject to assessments. This proposal was rejected by the property owners.

Although the present action was commenced by the plaintiffs on June 8, 1973, it did not come on for trial until July 8, 1976. There has been no construction on the lot in question although Austin did perform certain grading work and installed underground wiring as part of the initial development of the area. There was testimony that water mains and sewer lines were installed subsequent to the filing of this action.

In its decree, entered May 4, 1977, the District Court determined plaintiffs had a vested right to use a reasonable portion of Lot 19, for park and recreational purposes, based upon the protective covenants, Austin's advertising, and representations of the real estate agents. It found the plan for construction of townhouses, garages, and parking areas was unreasonable and enjoined its implementation. The court then ordered the defendants to provide a

suitable and reasonable area on the lot for park and recreational purposes. Austin Realty Co. prosecutes this appeal.

Austin argues the court erred in issuing the injunction because: (1) Plaintiffs did not plead or prove damages; (2) an action could not be based on fraud and misrepresentation; and (3) plaintiffs did not appeal from the action of the city council.

We will waste no time on the third assignment of error. It is the courts, and not the city council, which have the ultimate responsibility of enforcing protective covenants.

Austin contends plaintiffs are not entitled to injunctive relief since they failed to show they will suffer irreparable damage. In Schlitz Brewing Co. v. Nielsen, 77 Neb. 868, 110 N. W. 746 (1906), involving an action to enforce a restrictive covenant in a lease, this court stated: "Ordinarily, in a suit brought for that purpose, the plaintiff is entitled to an injunction without a showing of actual damages or that irreparable injury will result from a continued violation of the restrictive clause."

The rule is stated in 43A, C. J. S., Injunctions, § 100, p. 148: "It is a well-defined exception to the general rule requiring a showing of actual and substantial injury as a basis for entitlement to injunctive relief, that, where one who has entered into a restrictive covenant as to the use of the land commits a distinct breach thereof, he may be enjoined irrespective of the amount of damage caused by his breach, and even if there appears to be no substantial monetary damage. In such a case, it is not necessary to prove that the injury will be irreparable, and injunction may lie where there is inadequacy of legal remedy, as where damages would be incalculable because of the loss of quiet enjoyment. A court of equity fastens on the real contract and compels the execution of the very thing covenanted to be done."

Here, injunction is the only adequate remedy. On the billboard advertising and the brochures furnished to buyers, an area of 4.35 acres was set aside as a community unit area, which a prospective buyer, from the representations and the advertising, could reasonably interpret to be the area in which a private park and a recreation area would be established.

Exhibit 28, referred to heretofore, was on display in the office of Austin, where it could be examined by salesmen and prospective purchasers.

We said in Pool v. Denbeck, 196 Neb. 27, 241 N. W. 2d 503 (1976): "Injunction is an appropriate remedy for breach of restrictive covenants, a remedy at law being inadequate and leading to a multiplicity of actions and the subversion of the plan of development protected by such covenants."

It borders on the ridiculous to suggest that the homeowners in Hillsdale Estates are not damaged by the virtual elimination of the promised park, recreational area, swimming pool, etc., by reducing the area of 2.85 acres to a concrete slab 50 feet by 80 feet.

Austin argues that plaintiffs have no interest in Lot 19. Clause XVIII of the protective covenants grants each member of the corporation the right to use and enjoy the Commons, and an easement is created.

Austin relies on Clause XIV, which it quotes in its brief as follows: "The Company may retain legal title to the Commons until such time as the initial development thereof has been completed and may subdivide portions of the Commons into lots for the construction of multiple dwellings. Such multiple dwelling lots, when subdivided, shall cease to be a part of the Commons." The remainder of the clause states: "Provided however, that any such subdivision shall be made so as to preserve and maintain the sidewalk access from the Properties to the Commons, as shown on the recorded plat of Hillsdale Estates."

Although the clause does not place any restrictions upon the amount of land which may be subdivided, the clear implication is that a major portion of the lot will be preserved as the Commons. Clause XVII expressly provides: "The Company shall convey the Commons to the Corporation at such time as the initial development and the subdivision hereinabove described have been completed." In the preamble it is recited that "Austin Realty Co. desires to create within the Commons parks, playgrounds, recreational areas and facilities, scenic areas, and such building, structures, improvements and personalty as may be incident thereto; * * *." It is evident this cannot be done in the small area remaining in Lot 19 if Austin's construction of the agreements is accepted. The protective covenants, when read in their entirety, evidence an intention to preserve a sufficient area for park and recreational purposes.

In Lund v. Orr, 181 Neb. 361, 148 N. W. 2d 309 (1967), it is stated: "A restrictive covenant is to be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it; the location and character of the entire tract of land; the purpose of the restriction; whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers; and whether it was in pursuance of a general building plan for the development of the property."

We do not hesitate to suggest that the method of operation employed by Austin borders on sharp practice. The original plat described a park area. Its protective covenants suggested a substantial recreational area. All the advertising by Austin showed Lot 19 as a "Community Unit Area." Its billboards carried the following language in large type:

"FEATURING

"UNDERGROUND WIRING

"PRIVATE PARK
"RECREATION AREA
"ALL SPECIALS PAID."

Austin salesmen represented to prospective buyers there would be a park and recreation area, including picnic areas, tennis courts, and a swimming pool in the subdivision. It is evident this was a plan designed to further the sales of lots in Hillsdale Estates.

While the protective covenants did provide for the company to retain title to the Commons until such time as the initial development had been completed, and did permit it to subdivide a portion of the Commons into lots for the construction of multiple dwellings, anyone who checked exhibit 28 or the plat attached to exhibit 2 would have found approximately 2½ acres left for park and recreational purposes.

The language of the covenants must be interpreted in its entirety. The covenants read: "WHEREAS, Austin Realty Co. desires to create within the Commons parks, playgrounds, recreational areas and facilities, scenic areas, and such building, structures, improvements and personalty as may be incident thereto * * *." It is absurd to believe from this language that Austin was contemplating an eventual recreation area of 50 by 80 feet. It should be, and we so find, restricted to constructing its multiple dwelling units and parking on the west 2 acres of Lot 19. The balance of Lot 19 should be the Commons, to provide the park and recreational areas promised purchasers by Austin and contemplated in the protective covenants. This will provide the approximately 2.35-acre area described by one Austin representative. It should, however, include the 10-foot walkway across the west portion of Lot 19.

The District Court was correct in its determination in all respects, except that its judgment should be amended to restrict multiple dwelling units and parking to the west 2 acres of Lot 19, exclusive of the

walkway and the balance of Lot 19 should be set off to Hillsdale Estates, Inc., for recreational and park purposes for the benefit of the members of said corporation.

The judgment of the District Court is affirmed as modified.

AFFIRMED AS MODIFIED.