STATE OF NEBRASKA EX REL. CITY OF ALMA, A NEBRASKA
MUNICIPAL CORPORATION, APPELLEE, V. FURNAS COUNTY
FARMS, A GENERAL PARTNERSHIP, ET AL., APPELLANTS.
667 N.W.2d 512

Filed August 8, 2003. No. S-01-1313.

David A. Jarecke, of Crosby Guenzel, L.L.P., for appellant.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, and Douglas R. Walker, Alma City Attorney, for appellee City of Alma.

Stephen D. Mossman, of Mattson, Ricketts, Davies, Stewart & Calkins, and Julie M. Karavas, of Nebraska Cattlemen, Inc., for amicus curiae Nebraska Cattlemen, Inc.

Arend R. Baack, of Leininger, Smith, Johnson, Baack, Placzek, Steele & Allen, for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

In this action, the City of Alma (City), a city of the second class, sought a declaratory judgment with respect to the validity and applicability of certain ordinances pertaining to the construction of livestock confinement facilities utilizing solid and liquid waste storage lagoons. The City further sought an injunction requiring several defendants to comply with the ordinances. Furnas County Farms (FCF), a named defendant in the action, filed a cross-claim seeking a declaration that the ordinances are special class legislation, are arbitrary and unreasonable, and are preempted by state law. The district court for Harlan County declared that the ordinances are not arbitrary or unreasonable, are not preempted by state law, and are valid and binding on FCF. The district court further granted the City's request for injunctive relief. This appeal followed.

## II. FACTUAL BACKGROUND

In early 1997, the City learned that FCF and Sand Livestock Systems (SLS) planned to build a large hog confinement facility approximately 8 miles northwest of the Alma city limits in Harlan County, Nebraska. The hog confinement facility was to consist of, inter alia, three solid and liquid waste lagoons. The City hired an environmental engineer to prepare a report on the potential impact of such facility on the City's water supply. On the basis of such report, the City adopted ordinances Nos. 10-217-1, 10-217-3, and 11-047-1 through 11-047-3. In its operative petition, the City alleged it adopted the ordinances pursuant to the authority conferred upon it by Neb. Rev. Stat. §§ 17-536 and 17-537 (Reissue 1997). Section 17-536 provides that "[t]he jurisdiction of such city or village, to prevent any pollution or injury to the stream or source of water for the supply of such waterworks, shall extend fifteen miles beyond its corporate limits." Section 17-537 provides:

> The council or board of trustees of such cities and villages shall have power to make and enforce all needful rules and regulations in the construction, use, and management of such waterworks, mains, portion or extension of any system of waterworks or water supply and for the use of the water therefrom.

Other than within the framework of its preemption analysis, FCF does not challenge the authority of the City to adopt the ordinances pursuant to §§ 17-536 and 17-537. We similarly confine our analysis of the City's authority within that context.

The ordinances detail the process which an entity seeking to build a livestock facility within 15 miles of the City must follow in order to obtain a permit from the City for such purpose. Ordinance No. 10-217-1 provides that a permit must be obtained from the City prior to constructing "[a]ll manufacturing, livestock or other facilities which create liquid or solid waste within fifteen miles of the corporate limits of the City of Alma." Two categories of livestock facilities are exempted from the permit requirement: livestock facilities which were in existence at the time of the "final passage" of ordinance No. 10-217-1 and livestock facilities having a capacity of not more than 2,500 head.

Ordinance No. 10-217-3 provides, in relevant part, that a permit granted by the City may be revoked in the event the livestock facility "is not constructed or operated according to the plan submitted for approval," or in the event approval of the permit was obtained by fraud.

Ordinance No. 11-047-1 details the necessary contents of an application for permit to build a livestock facility. Pursuant to the ordinance, such permit application "shall consist of all written materials required by the Department of Environmental Quality or its successor agency of the State of Nebraska for the operation of such facility." The ordinance further provides for a grievance procedure should the permit application be denied.

Ordinance No. 11-047-2 provides that the City shall issue a permit "if the applicant's proposed facility meets all of the requirements of the Nebraska Department of Environmental Quality," as well as the supplemental requirements imposed by ordinance No. 11-047-3.

Finally, ordinance No. 11-047-3 requires an applicant to comply with certain enumerated requirements in addition to any requirements imposed by the Nebraska Department of Environmental Quality. Such requirements include, inter alia: soil analysis of the proposed site of any waste lagoon, to be gathered by drilling a series of test holes "at least ten feet below the bottom elevation of the lagoon"; any waste lagoon must use "a synthetic,

impermeable liner of at least 60 mil thickness placed over at least one foot thickness of compacted soil with provisions for leachate recovery and leak detection"; the applicant is prohibited from applying any solid or liquid waste to land with a slope greater than 10 percent or in an amount that exceeds "the infiltration capacity of the soil or the nutrient requirements of the crop"; the applicant must install ground water monitoring wells to be used to annually monitor ground water for nitrate and chloride content; and the applicant is required to "submit an acceptable bond or financial guarantee to [en]sure that waste containment facilities are closed in accordance with applicable laws and regulations of the state."

After the ordinances were adopted, the City sent a letter to FCF's attorney informing him that pursuant to the recently enacted ordinances, FCF was required to obtain a permit from the City before building its proposed hog confinement facility. The letter included copies of the ordinances. In response, FCF informed the City by letter that it was "proceeding to build our facility as planned" based on its belief that the ordinances "are of no force and effect." Thereafter, concrete was poured for a number of buildings at the hog confinement facility.

On November 5, 1997, the City filed suit against FCF, a general partnership; SLS, a corporation; Charles W. Sand, Jr.; and Timothy A. Cumberland (collectively defendants). Sand and Cumberland were alleged to be general partners of FCF as well as corporate officers of SLS. In its lawsuit, the City sought a writ of mandamus requiring defendants to comply with the ordinances, as well as a declaratory judgment with respect to the validity and applicability of the ordinances. Construction of the facility ceased at the time the suit was filed.

FCF filed an "Answer and Cross-Petition," denying the allegations in the City's petition. FCF also asserted several affirmative defenses, including, inter alia, that (1) the City's ordinances constitute unconstitutional special legislation; (2) "§ 8[1]-1504(11)" of the Nebraska Revised Statutes "takes precedence over § 17-536 [and t]hat if the Nebraska Department of Environmental Quality issues a permit to Furnas County Farms allowing the erection of its swine facility, the City has no authority to prohibit same through its own regulations"; and (3) the City's ordinances are unreasonable because they "are not reasonably necessary to

prevent any pollution or injury to the stream or source of water of the City of Alma, but are rather calculated to make it unreasonably expensive and burdensome for Furnas County Farms to erect its facility."

The district court issued a peremptory writ of mandamus commanding defendants to comply with the requirements of the ordinances. On appeal, this court reversed and vacated the peremptory writ and remanded the cause for further proceedings with respect to the City's request for declaratory relief. *State ex rel. City of Alma v. Furnas Cty. Farms*, 257 Neb. 189, 595 N.W.2d 551 (1999).

After remand, the City filed an amended petition seeking, inter alia, a judgment pursuant to Neb. Rev. Stat. § 25-21,150 (Reissue 1995), declaring the City's ordinances to be valid and binding upon defendants, as well as a temporary and permanent injunction requiring defendants to comply with the ordinances before resuming construction of the hog confinement facility.

FCF filed an "Amended Cross Petition" seeking damages in the amount of $1,600,000 allegedly incurred as the result of the delay in building the proposed hog confinement facility. FCF further sought a declaratory judgment pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Cum. Supp. 2000) that the ordinances violate both federal and state Constitutions in the following particulars: (1) the ordinances constitute local or special laws in violation of Neb. Const. art. III, § 18; (2) the ordinances are preempted by Neb. Rev. Stat. § 81-1504(11) (Reissue 1999) "as set forth in [FCF]'s Answer"; and (3) the ordinances are an unreasonable, unlawful, and improper exercise of the police power delegated to the City by the federal and state Constitutions.

The City filed a motion for summary judgment with respect to FCF's cause of action for damages. The district court granted the motion, determining that the City, as a political subdivision, was immune from such a suit pursuant to Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997).

After a trial on the remaining issues, the district court entered an order determining that the ordinances are not preempted by Nebraska's Environmental Protection Act (NEPA), Neb. Rev. Stat. §§ 81-1501 to 81-1532 (Reissue 1999 & Cum. Supp. 2000). The district court further determined the ordinances were not

arbitrarily and unreasonably enacted and do not create an arbitrary or unreasonable classification. Finally, the court determined the ordinances are not special class legislation. The district court concluded that the ordinances are "valid, enforceable and binding upon [defendants]."

FCF attempted to appeal from the district court's order. In response, this court determined that the district court's order was not a final order, as the district court had not addressed the City's request for injunctive relief. Accordingly, we dismissed the appeal and remanded the matter to the district court for further proceedings. *City of Alma v. Furnas County Farms*, 262 Neb. xxiii (No. S-00-1303, June 28, 2001).

After a subsequent hearing on the issue of injunctive relief, the district court found that the City had a "clear right" to injunctive relief pursuant to its police power to protect the public health, safety, and welfare of its citizens. The district court, noting the dispute between the parties as to whether the City was required to show irreparable harm in order to obtain an injunction, determined that even if the City was required to make a showing of irreparable harm, the City had met that burden. Accordingly, the district court issued an injunction requiring defendants to comply with the ordinances before resuming construction of the hog confinement facility.

This appeal followed. Although the notice of appeal was filed on behalf of all four original defendants, only FCF filed a brief in this court.

### III. ASSIGNMENTS OF ERROR

FCF assigns, rephrased and renumbered, that the district court erred in (1) determining that state law does not preempt the ordinances; (2) admitting into evidence over FCF's objections the opinions of the City's expert witnesses as well as exhibit 31, an impact analysis report authored by one of the experts; (3) granting the City injunctive relief; and (4) "fail[ing] to consider the damages suffered by Furnas County Farms as a direct result of the City's adoption of the challenged ordinances."

### IV. STANDARD OF REVIEW

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation

to resolve the questions independently of the conclusion reached by the trial court. *Longo v. Longo, ante* p. 171, 663 N.W.2d 604 (2003); *Village of Winside v. Jackson,* 250 Neb. 851, 553 N.W.2d 476 (1996).

■ To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *State v. Whitlock,* 262 Neb. 615, 634 N.W.2d 480 (2001); *Kirchner v. Wilson,* 262 Neb. 607, 634 N.W.2d 760 (2001).

■ An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Burlington Northern Santa Fe Ry. Co. v. Chaulk,* 262 Neb. 235, 631 N.W.2d 131 (2001).

## V. ANALYSIS

### 1. PREEMPTION

#### (a) Applicability of Livestock Waste Management Act and Title 130

In its first assignment of error, FCF contends the district court erred in failing to determine that the ordinances are preempted by state law. FCF argues the ordinances are preempted by (1) the NEPA; (2) the Livestock Waste Management Act (LWMA), Neb. Rev. Stat. §§ 54-2401 to 54-2414 (Reissue 1998 & Cum. Supp. 2000); and (3) title 130 of the rules and regulations of the Department of Environmental Quality enacted pursuant to both acts.

The City argues, however, that neither the LWMA nor title 130 is appropriate for consideration by this court in our preemption analysis. According to the City, the only issue presented to, and decided by, the district court was whether the ordinances are preempted by the NEPA. In response, FCF contends that it could not have included the LWMA in its original "Answer and Cross-Petition" because the LWMA became operative only after such pleading was filed. FCF further contends that in any event, it was "impossible" for the district court to evaluate the preemptive effect of the NEPA without examining the LWMA. Reply brief for appellant at 4. We turn first to a consideration of which state enactments are properly before this court in our preemption analysis.

The district court determined that the ordinances are not pre-empted by state law, concluding:

> Although the pleadings in this matter confine the preemption argument to [Neb Rev. Stat. § 81-1504(11) (Reissue 1999)], the argument in [FCF's] brief is broader and basically argues that the enactment of the Environmental Protection Act preempts Neb. Rev. Stat. Section 17-536 (Reissue 1997), the statute primarily relied on by the City of Alma.
>
> A review of the Environmental Protection Act and the evidence herein, leads this Court to conclude that the field of pollution control has not been preempted by the legislature. Section 81-1504(18) (Reissue 1994 and 1999) directs the Department of Environmental Quality to "encourage local units of government to handle air, land, and water pollution problems within their respective jurisdictions and on a cooperative basis and to provide technical and consultative assistance therefore." This is not language indicating a preemptive intent.

(Emphasis in original.)

The district court's preemption analysis clearly focused exclusively on the NEPA. The district court did not refer to either the LWMA or title 130 in its order, nor did the district court's order discuss any particular provision of either the LWMA or title 130 in its preemption analysis. FCF argues such was error. We disagree.

As the district court noted in its written order, the only state law basis for preemption raised by FCF's operative pleadings was § 81-1504(11) of the NEPA. Furthermore, a review of the bill of exceptions discloses that during the trial of this matter, FCF did not argue or present any evidence with respect to the preemptive effect of either the LWMA or title 130.

FCF contends that it could not have raised the LWMA at the time it filed its original "Answer and Cross-Petition" because the LWMA was not yet in effect. Although this is true, it is not persuasive. The operative date of the LWMA was April 15, 1998. See 1998 Neb. Laws, L.B. 1209. On January 27, 2000, 21 months after the effective date of the LWMA, FCF filed its "Amended Cross Petition." FCF's amended cross-petition did

not contain any allegation that the LWMA or title 130 provided a basis for preemption.

We further find unpersuasive FCF's contention that it was "impossible" for the district court to evaluate the preemptive effect of the NEPA without examining the LWMA. While it is true that the NEPA contains several subsections which refer to the LWMA, the NEPA and the LWMA are distinct and separate legislative enactments containing separate and distinct substantive provisions. Furthermore, having previously concluded that the LWMA was not presented to the district court by the pleadings, we further determine that under the record presented on appeal, it is not only possible but appropriate to analyze the preemptive effect of the NEPA without considering the LWMA.

■ In sum, the issue of whether the City's ordinances are preempted by the LWMA or title 130 was not presented to or decided by the district court. As such, the district court did not err in failing to consider their preemptive effect, if any, and we do not reach that issue. An issue not presented to or decided by the trial court is not appropriate for consideration on appeal. *Farmers Mut. Ins. Co. v. Kment*, 265 Neb. 655, 658 N.W.2d 662 (2003); *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996). Consequently, our preemption analysis is limited to a determination of whether the NEPA preempts the ordinances.

### (b) Does NEPA Preempt City's Ordinances?

■ Preemption of municipal ordinances by state law is based on the fundamental principle that "municipal ordinances are inferior in status and subordinate to the laws of the state." 5 Eugene McQuillin, The Law of Municipal Corporations § 15.20 at 106 (3d ed. 1996). Thus, " '[w]here there is a direct conflict between a city ordinance and a state statute, the statute is the superior law.' " *Herman v. Lee*, 210 Neb. 563, 567, 316 N.W.2d 56, 59 (1982) (quoting *Arrow Club, Inc. v. Nebraska Liquor Control Commission*, 177 Neb. 686, 131 N.W.2d 134 (1964)).

■ The touchstone of preemption analysis is legislative intent. "[T]he central question in a preemption case is not whether the legislature intended to grant authority to municipalities to act concerning a particular matter, but rather whether the legislature intended to deny municipalities the right to legislate

568

on the subject." 5 McQuillin, *supra* at 107. In construing a statute for preemption purposes, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996). The purpose and intent of the Legislature must be ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id.* When reviewing preemption claims, the court is obligated to harmonize, to the extent it legally can be done, state and municipal enactments on the identical subject. *State v. Kubik*, 159 Neb. 509, 67 N.W.2d 755 (1954); *Phelps Inc. v. City of Hastings*, 152 Neb. 651, 42 N.W.2d 300 (1950). When an ordinance is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes the ordinance clearly valid will be given. *Gillis v. City of Madison*, 248 Neb. 873, 540 N.W.2d 114 (1995).

A municipal ordinance may be preempted by state law in three different circumstances. First, the Legislature may expressly declare in explicit statutory language its intent to preempt municipal ordinances. See *Midtown Palace, Inc. v. City of Omaha*, 193 Neb. 785, 229 N.W.2d 56 (1975) (recognizing that in Neb. Rev. Stat. § 28-926.33 (Reissue 1975), Legislature expressly declared in explicit statutory language its intent to preempt all municipal regulation of "obscene" material).

Second, in the absence of explicit statutory language, the Legislature's intent to preempt municipal ordinances may be inferred from a comprehensive scheme of legislation. See *Phelps Inc., supra* (determining that Legislature did not intend to preempt field of liquor regulation); *Bali Hai', Inc. v. Nebraska Liquor Control Commission*, 195 Neb. 1, 236 N.W.2d 614 (1975) (affirming that Legislature did not intend to preempt field of liquor regulation). Often called field preemption, it has been described in the following manner:

> [A]n intent by the state to preempt an entire field of legislation need not be expressly declared. Preemption may be implied from the nature of the subject matter being regulated and the purpose and scope of the state statutory scheme. . . .

. . . .

. . . [A]n ordinance may cover an authorized field of local laws not occupied by general laws, or may complement a field not exclusively occupied by the general laws. However, where the state has occupied the field of prohibitory legislation on a particular subject, a municipality lacks authority to legislate with respect to it.

5 Eugene McQuillin, The Law of Municipal Corporations § 15.20 at 107-08 (3d ed. 1996).

 Third, a municipal ordinance is preempted to the extent that it actually conflicts with state law. *Village of Winside*, 250 Neb. at 854, 553 N.W.2d at 479 (determining local ordinance requiring nonusers of garbage service to pay fee was invalid because of conflict with state statute permitting municipalities to impose fee upon " 'each person whose premises are served by the [garbage] facility or system' " (emphasis omitted)); *Bodkin v. State*, 132 Neb. 535, 536-37, 272 N.W. 547, 548 (1937) (perceiving no conflict between a statute making it unlawful for licensee to sell alcohol to minors " 'knowing them to be such' " and local ordinance providing that " '[n]o person shall, within the city,' sell any alcoholic liquors to minors").

[T]hat which is allowed by the general laws of the state cannot be prohibited by ordinance, without express grant on the part of the state. Conversely, without express legislative grant, an ordinance cannot authorize what the statutes forbid. . . . [T]he fact that a local ordinance does not expressly conflict with the statute will not save it when the legislative purpose in enacting the statute is frustrated by the ordinance.

5 McQuillin, *supra* at 107.

 This court has stated that " '[a] city ordinance is inconsistent with a statute if it is contradictory in a sense that the two legislative provisions cannot coexist. . . . Generally, an ordinance cannot prohibit what the Legislature has expressly licensed, authorized, or permitted.' " *Herman v. Lee*, 210 Neb. 563, 567, 316 N.W.2d 56, 59 (1982) (quoting *Arrow Club, Inc. v. Nebraska Liquor Control Commission*, 177 Neb. 686, 131 N.W.2d 134 (1964)).

In its brief, FCF begins the first section of its preemption argument with the heading "Exclusive Occupation of the Field by

State Law: Express Preemption." Brief for appellant at 14. While in this heading FCF invokes both express and field varieties of preemption, in its argument which follows, FCF does not contend that the NEPA expressly preempts the ordinances. In any event, we are unable to find any language in the NEPA expressly declaring the Legislature's preemptive intent. We therefore consider FCF's specific preemption arguments with respect to field and conflict preemption.

FCF first contends that the district court erred in determining that "the field of pollution control" has not been preempted by the NEPA. According to FCF, the Legislature's intent to preempt the field of pollution control may reasonably be inferred from the following subsections of § 81-1504 of the NEPA:

The [D]epartment [of Environmental Quality] shall have and may exercise the following powers and duties:

(1) To exercise exclusive general supervision of the administration and enforcement of the Environmental Protection Act, the Integrated Solid Waste Management Act, the Livestock Waste Management Act, and all rules and regulations and orders promulgated under such acts;

. . . .

(10) To require submission of plans, specifications, and other data relative to, and to inspect construction of, disposal systems or any part thereof prior to issuance of such permits or approvals as are required by the Environmental Protection Act, the Integrated Solid Waste Management Act, and the Livestock Waste Management Act;

. . . .

(13) To exercise all incidental powers necessary to carry out the purposes of the Environmental Protection Act, the Integrated Solid Waste Management Act, and the Livestock Waste Management Act;

. . . .

(23) To delegate, by contract with governmental subdivisions which have adopted local air, water, or land pollution control programs approved by the council, the enforcement of state-adopted air, water, or land pollution control regulations within a specified region surrounding the jurisdictional area of the governmental subdivisions.

Prosecutions commenced under such contracts shall be conducted by the Attorney General or county attorneys as provided in the Environmental Protection Act, the Integrated Solid Waste Management Act, and the Livestock Waste Management Act;

. . . .

(30) Under such conditions as it may prescribe for the review, recommendations, and written approval of the [D]irector [of Environmental Quality], to require the submission of such plans, specifications, and other information as it deems necessary to carry out the Environmental Protection Act, the Integrated Solid Waste Management Act, and the Livestock Waste Management Act or to carry out the rules and regulations adopted pursuant to the acts. When deemed necessary by the director, the plans and specifications shall be prepared and submitted by a professional engineer licensed to practice in Nebraska.

The existence of the foregoing provisions on the subject of pollution control does not per se indicate a preemptive intent on the part of the Legislature. "[T]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted." 5 Eugene McQuillin, The Law of Municipal Corporations § 15.20 at 107 (3d ed. 1996). To determine the Legislature's intent, we must consider the foregoing provisions relied upon by FCF in relation to all other provisions of the NEPA. The purpose and intent of the Legislature must be ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996).

In its brief, FCF does not address the following additional subsections of § 81-1504 which we find relevant in our analysis:

The [D]epartment [of Environmental Quality] shall have and may exercise the following powers and duties:

. . . .

(18) *To encourage local units of government to handle air, land, and water pollution problems within their respective jurisdictions and on a cooperative basis* and to provide technical and consultative assistance therefore;

(19) To consult with any person proposing to construct, install, or otherwise acquire an air, land, or water contaminant source or a device or system for control of such source, upon request of such person, concerning the efficacy of such device or system or concerning the air, land, or water pollution problem which may be related to the source, device, or system. Nothing in any such consultation shall be construed to relieve any person from compliance with the Environmental Protection Act, the Integrated Solid Waste Management Act, the Livestock Waste Management Act, rules and regulations in force pursuant to the acts, *or any other provision of law.*

(Emphasis supplied.) Additionally, pursuant to § 81-1506(1)(b), it is unlawful for any person

[t]o discharge or emit any wastes into any air, waters, or land of the state which reduce the quality of such air, waters, or land below the air, water, or land quality standards established therefor by the council. Any such action is hereby declared to be a public nuisance. *A livestock operation is not a nuisance if . . . [i]t is in compliance with applicable regulations adopted by the council and zoning regulations of the local governing body having jurisdiction.*

(Emphasis supplied.) Further, pursuant to § 81-1528(1),

[*t*]*he Environmental Protection Act shall not apply in any political subdivision which provides for the control of air, water, or land pollution by resolution, ordinance, or regulation not inconsistent with the substantive provisions of the Environmental Protection Act or any rule or regulation adopted pursuant to such act . . . .*

(Emphasis supplied.)

In view of the foregoing provisions, the purpose and intent of the Legislature, ascertained from the entire language of the NEPA, does not support FCF's claim of field preemption. To the contrary, considering the NEPA in its plain, ordinary, and popular sense, it is clear that the Legislature contemplated that municipalities would continue to enact ordinances on the subject of pollution control after the enactment of the NEPA. See *Village of Winside, supra.* Consequently, we determine that in enacting the NEPA, the Legislature did not intend to deny municipalities

the right to legislate on the subject of pollution control. FCF's contention that the NEPA preempts the field of pollution control is without merit.

FCF next contends the district court erred in failing to determine that the ordinances are preempted because they conflict with the NEPA. FCF's first argument in this regard is with respect to the following provision of ordinance No. 11-047-3: "The applicant *shall* submit an acceptable bond or financial guarantee to [en]sure that waste containment facilities are closed *in accordance with applicable laws and regulations of the state* without cost to the taxpayers of the country [sic]." (Emphasis supplied.) FCF argues such provision conflicts with the following provision of the NEPA:

> The [Environmental Quality C]ouncil shall adopt and promulgate rules and regulations requiring all new or renewal permit or license applicants regulated under the Environmental Protection Act, the Integrated Solid Waste Management Act, or the Livestock Waste Management Act to establish proof of financial responsibility by providing funds in the event of abandonment, default, or other inability of the permittee or licensee to meet the requirements of its permit or license or other conditions imposed by the department pursuant to the acts. The council may exempt classes of permittees or licensees from the requirements of this subdivision when a finding is made that such exemption will not result in a significant risk to the public health and welfare.

§ 81-1505(21)(a). According to FCF, the possibility of exemption from the bond requirement provided by § 81-1505(21)(a) conflicts with the mandatory bond requirement imposed by the City's ordinance. On this issue, we agree.

■ The purpose of the mandatory bond requirement imposed by the subject provision of the ordinance is aimed to ensure compliance with "applicable laws and regulations of the state" for closing down waste containment facilities. See ordinance No. 11-047-3. The purpose of "providing funds" pursuant to § 81-1505(21)(a) is also to ensure compliance with the same provisions of state law referred to in the subject provision of the ordinance. The Legislature has determined, however, to permit

an exemption from such requirements under certain circumstances. Consequently, the subject provision of the ordinance in effect prohibits what state law expressly allows. "[T]hat which is allowed by the general laws of the state cannot be prohibited by ordinance, without express grant on the part of the state." 5 Eugene McQuillin, The Law of Municipal Corporations § 15.20 at 107 (3d ed. 1996). Since the subject provision of the ordinance directly conflicts with § 81-1505(21)(a), it is preempted and unenforceable. We therefore determine the district court erred insofar as it failed to conclude that the mandatory bond provision of ordinance No. 11-047-3 is preempted by the NEPA.

Finally, FCF argues that under our holding in *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992), the City's authority to regulate its hog confinement facility is preempted by the NEPA and that as such, § 17-536 provides no authority or jurisdiction permitting the City to enact these ordinances. In *Sarpy County*, this court determined that pursuant to the then-existing provisions of the NEPA, a city of the second class has no authority to regulate solid waste disposal areas located outside that city's zoning jurisdiction.

*Sarpy County, supra*, is clearly distinguishable. Our holding in *Sarpy County*, was specifically limited to the application of the then-existing provisions of the NEPA to solid waste disposal areas. The result in *Sarpy County* was based on our interpretation of § 81-1518(1) (Reissue 1987), which provided in part:

> "Before the director shall approve a new solid waste disposal area, it shall be approved by the county board of the county, if the area is outside the zoning jurisdiction of a city or village, or by the city council or board of trustees if within the zoning jurisdiction of a city or village."

*Sarpy County*, 241 Neb. at 984, 492 N.W.2d at 569. Pursuant to this subsection of the NEPA, we determined that notwithstanding § 17-536, the authority of a city of the second class to regulate solid waste disposal areas was limited by the NEPA to that city's "zoning jurisdiction." Given that the zoning jurisdiction of a city of the second class extended only to "within one mile" of the city's corporate limits, Neb. Rev. Stat. § 17-1001 (Reissue 1997), we determined that § 17-536 did not, under this circumstance, provide the city of Springfield authority to enact the ordinances at issue.

The NEPA contains no provision similar to that relied on in *Sarpy County, supra*, limiting the authority of a city of the second class to regulate a livestock confinement facility utilizing solid and liquid waste storage lagoons. Furthermore, FCF's hog confinement facility would not qualify either as a "solid waste disposal area" for purposes of this court's analysis in *Sarpy County*, or as a "solid waste management facility" for purposes of the NEPA. See, *Sarpy County, supra*; §§ 81-1517 and 81-1518 (Reissue 1987). See, also, § 81-1502(26), (37), and (38). For these reasons, we find no merit to FCF's contention.

## 2. EVIDENTIARY ERRORS

FCF next assigns as error a number of evidentiary rulings made by the district court. Specifically, FCF asserts that the district court erred in admitting the opinions of the City's two expert witnesses over FCF's foundation and hearsay objections. FCF further asserts the district court erred in admitting exhibit 31, an impact analysis report, over its hearsay objection. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *State v. Whitlock*, 262 Neb. 615, 634 N.W.2d 480 (2001); *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001).

In its brief, FCF states that "[w]ithout such evidence the City offered no rational basis for the passage of the Ordinance and its application as to the FCF facility." Brief for appellant at 47. Such sentence, apparently addressed to FCF's claim in the district court that the ordinances are arbitrary and unreasonable, is the only argument made by FCF that even tangentially addresses how it was prejudiced by the admission of such evidence. FCF, however, has not assigned as error the district court's determination that the ordinances are not arbitrary or unreasonable. Errors argued but not assigned will not be considered on appeal. *Forgét v. State*, 265 Neb. 488, 658 N.W.2d 271 (2003); *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). Moreover, FCF has not argued how the district court's evidentiary rulings resulted in undue prejudice with respect to any other issue that is properly before us. Thus, even if the district court's evidentiary rulings were erroneous, we perceive no basis from which to conclude that

a substantial right of FCF was unfairly prejudiced. Consequently, we decline to consider whether the district court's evidentiary rulings were prejudicial. FCF's assignment of error is without merit.

### 3. Injunction

 FCF next assigns that the district court erred in granting the City injunctive relief. An injunction is an extraordinary remedy and ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Central States Found. v. Balka,* 256 Neb. 369, 590 N.W.2d 832 (1999).

FCF contends there is no evidence that FCF violated the ordinances and that the City failed to meet its burden of proving irreparable harm:

> The City seeks an injunction to stop the construction of a swine confinement that is not in compliance with the City's ordinances. The City sought to prevent an act that is not occurring. The City offered no evidence of actual or substantial injury. The City failed to offer any evidence that it was suffering or that it would suffer, an irreparable harm. The City could not meet its burden of proof because FCF was not taking any steps to build a swine confinement facility subsequent to the District Court Order finding the Ordinance valid.

Brief for appellant at 47-48.

We first address FCF's contention that there is no evidence that FCF violated the ordinances. Our de novo review of the record reveals that after receiving copies of the recently enacted ordinances, FCF's attorney sent a letter to the City expressing belief that the ordinances are invalid and of its intention to commence construction of its facility without first obtaining a permit from the City:

> We appreciate your sending us copies of the Ordinances . . . . Please be advised that I have advised my clients that these Ordinances are of no force or effect. In other words, we are of the opinion that [the City does not have the] power under [its charter] from the State of Nebraska to require the applications for permits as shown in your Ordinances.
>
> . . . .

Therefore, as you may have noticed, we are proceeding to build our facility as planned.

Furthermore, the record shows that prior to the City's filing suit on November 5, 1997, FCF commenced construction of its facility by pouring concrete at the site "for a number of buildings." FCF made no effort, however, to obtain a permit from the City prior to beginning construction, as required by the ordinances. Therefore, contrary to FCF's contention, upon our de novo review of the record, we find that FCF violated the ordinances and that its contention to the contrary is without merit.

We now turn to FCF's contention that the City failed to carry its burden of proving irreparable harm. This court has expressly recognized that irreparable harm need not be shown to enjoin a breach of a restrictive covenant properly filed of record. *Breeling v. Churchill*, 228 Neb. 596, 423 N.W.2d 469 (1988); *Wessel v. Hillsdale Estates, Inc.*, 200 Neb. 792, 266 N.W.2d 62 (1978). See, also, *Chestnut Real Estate v. Huber*, 148 Md. App. 190, 811 A.2d 389 (2002); *Focus Entertainment v. Partridge Greene*, 253 Ga. App. 121, 558 S.E.2d 440 (2001); *Jack Eckerd v. 17070 Collins A. Shop. C.*, 563 So. 2d 103 (Fla. App. 1990); *DeNina v. Bammel Forest Civic Club, Inc.*, 712 S.W.2d 195 (Tex. App. 1986); 43A C.J.S. *Injunctions* § 195 (1978). While this court has not expressly recognized such an exception where a city seeks to permanently enjoin the violation of an ordinance, we have implicitly abided by such a rule.

As such, we have consistently regarded evidence of a violation of a valid statute or ordinance as sufficient to warrant the issuance of a permanent injunction to a municipality or public entity seeking to prevent further violations. *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985); *State ex rel. Meyer v. Weiner*, 190 Neb. 30, 205 N.W.2d 649 (1973); *State ex rel. Meyer v. Knutson*, 178 Neb. 375, 133 N.W.2d 577 (1965); *City of Beatrice v. Williams*, 172 Neb. 889, 112 N.W.2d 16 (1961); *City of Omaha v. Glissmann*, 151 Neb. 895, 39 N.W.2d 828 (1949); *State v. Chicago & N. W. Ry. Co.*, 147 Neb. 970, 25 N.W.2d 824 (1947); *City of Lincoln v. Logan-Jones*, 120 Neb. 827, 235 N.W. 583 (1931). See, also, *City of Omaha v. Cutchall*, 173 Neb. 452, 458, 114 N.W.2d 6, 10 (1962) (stating that defendants may be "enjoined from violating the ordinance . . .

unless the ordinance is clearly shown to be arbitrary and unreasonable with respect to the property involved"). " 'Injunction is a proper remedy to be used by the state in the protection of public rights, property, or welfare, whether or not the acts complained of violate a penalty statute and whether or not they constitute a nuisance.' " *Knutson,* 178 Neb. at 381, 133 N.W.2d at 582 (quoting *Chicago & N. W. Ry. Co., supra*). Irreparable harm to public rights, property, or welfare is presumed to result from actions which by municipal ordinance have been declared unlawful. See *State ex rel. Spire v. Strawberries, Inc.,* 239 Neb. 1, 473 N.W.2d 428 (1991).

Such decisions of this court are consistent with the expressly declared rule in other jurisdictions that a municipality or public entity which shows a violation of a valid statute or ordinance need not show irreparable harm in order to obtain a permanent injunction to prevent further violations. *City of Europa v. Hodges,* 722 So. 2d 695 (Miss. 1998); *Wegner Auto Co., Inc. v. Ballard,* 353 N.W.2d 57 (S.D. 1984); *Joint School v. Wisconsin Rapids Ed. Asso.,* 70 Wis. 2d 292, 234 N.W.2d 289 (1975); *Conway-Bogue v. Bar Assn.,* 135 Colo. 398, 312 P.2d 998 (1957); *Miller v. Knorr,* 553 So. 2d 1043 (La. App. 1989) (determining proof of irreparable injury unnecessary to enjoin violation of valid zoning ordinance). See, also, 43A C.J.S., *supra* at 406-07 (stating that "an allegation of irreparable injury is not necessary as a basis for issuance of a temporary injunction in a suit brought by a city or other public body alleging violation of its ordinances and state statutes"). In such cases, irreparable harm to the public is presumed to result from actions which by statute or ordinance have been declared unlawful. *City of Europa, supra.* As articulated by the Wisconsin Supreme Court, "[t]he express basis for such holdings is that the fact that the activity has been declared unlawful reflects a legislative or judicial determination that it would result in harm which cannot be countenanced by the public." *Joint School,* 70 Wis. 2d at 310-11, 234 N.W.2d at 300 (holding that violation of ban on public employee strikes may be enjoined "without the presentation of evidence of actual harm in a particular case").

In the instant case, our de novo review of the record shows that the City presented sufficient evidence to the district court that

FCF was in violation of the ordinances. Additionally, in rejecting FCF's claim that the ordinances are arbitrary and unreasonable, the district court determined that the ordinances are valid and binding upon FCF. FCF has not assigned as error the district court's determination that the ordinances are not arbitrary and unreasonable. We determine the injunction was properly issued. FCF's assignment of error is without merit.

### 4. DAMAGES

Finally, FCF assigns as error that "[t]he District Court failed to consider the damages suffered by [FCF] as a direct result of the City's adoption of the challenged ordinances." Such assignment of error is presumably addressed to the district court's grant of summary judgment to the City with respect to FCF's cross-claim for damages. In its brief, FCF claims that

> [t]he District Court further erred in granting Summary Judgment to the City of Alma as to FCF's First Cause of Action of its Cross-Petition. FCF has suffered damages due to its inability to construct and operate the facilities as permitted under Nebraska law. Therefore this Court should declare the Ordinance[s] void and unenforceable and strike the injunction against FCF and remand this matter back to the District Court to determine the amount of FCF's damages.

Brief for appellant at 48. FCF's reply brief states that "FCF further requests that the Court find that the District Court erred in granting summary judgment to the City of Alma as to FCF's first cause of action of its Cross Petition." Reply brief for appellant at 9.

The foregoing constitutes the entirety of any statements which even tangentially relate to FCF's assigned error. Such statements, however, merely restate the assigned error and thus do not constitute the required argument in support of the assigned error. See Neb. Ct. R. of Prac. 9D(1)d and h (rev. 2000). Errors that are assigned but not argued will not be addressed by an appellate court. *Harsh International v. Monfort Indus., ante* p. 82, 662 N.W.2d 574 (2003); *In re Application of Lincoln Electric System,* 265 Neb. 70, 655 N.W.2d 363 (2003). We therefore do not address this assigned error.

## VI. CONCLUSION
The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.