1733 ESTATES ASSOCIATION, INC., APPELLANT, V. LORETTA JEAN RANDOLPH, APPELLEE.

485 N.W.2d 339

Filed March 24, 1992.    No. A-89-1234.

Patrick J. Nelson, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., and, on brief, Steven R. Voigt, of Butler, Voigt & Brewster, P.C., for appellant.

Loretta Jean Randolph, pro se.

SIEVERS, Chief Judge, and MILLER-LERMAN and WRIGHT, Judges.

SIEVERS, Chief Judge.

The appellant, 1733 Estates Association, Inc., brought suit

(1)

in the district court for Buffalo County, Nebraska, seeking to enjoin Loretta Jean Randolph from renting the basement portion of her home to tenants. The appellant was seeking to enforce a restrictive covenant of record which provided: "I. USE OF LOTS: All of said lots in said subdivision shall be used for residential purposes only and shall be restricted to single family dwellings."

The trial court held that the restrictive covenants did not restrict the activities and use of the property by Randolph and denied the request for permanent injunction. Although there are several assignments of error, the decisive issue in this case is whether the restrictive covenant in question prohibits Randolph from renting the basement portion of her home to tenants.

Randolph is the owner of a residence located on a lot in Buffalo County, Nebraska. The residence and the lot are outside the city limits of Kearney. When Randolph and her former husband moved into the residence, the basement of the home was not finished in any way. Before the Randolphs separated and divorced, Randolph's former husband began finishing the basement, and he constructed a bedroom and a family room. After the first tenant, Joan Tarrell, began her occupancy in October 1987, additional construction was undertaken and completed. The result was that the basement had a kitchen, three bedrooms, a family room, a bathroom, and a private stairway entrance from the garage down to the basement. Tarrell shared this basement space with a college student and paid $425 per month rent for the two of them. Tarrell testified that she "resided primarily in the basement area of the house." She also testified that she was not prohibited from using the entire residence, but the record is silent on the extent to which she used the upstairs portion, although Tarrell's cat slept "most of the time in Jean's red velvet chair upstairs."

There were other tenants after Tarrell, usually women that were not related to Randolph. Some of the tenants paid rent, while others lived there in exchange for work they performed for a cleaning service which Randolph operated.

The basement area could be accessed from the entryway Randolph had constructed in the garage, which entryway is not visible from the exterior of the house. Entry was also possible

through the front door of the home and down the original interior stairway leading to the basement. There was a door at the bottom of this stairway, but it was not locked. Thereby, the tenants and Randolph could freely travel between the upstairs and the basement. Tenants could and did use this common access to the basement, as well as the separate locked entrance from the garage. The extent to which the two different means of access were utilized, as well as the extent to which tenants spent time in the upstairs portion of the house, is unclear from the record. In this regard, we observe that Randolph tried the case without counsel, and thus, there is some imprecision in the evidence presented by Randolph.

An action to enjoin a breach of restrictive use covenants is equitable in nature. *Egan v. Catholic Bishop*, 219 Neb. 365, 363 N.W.2d 380 (1985). On appeal to this court, actions in equity are reviewed de novo on the record. See Neb. Rev. Stat. § 25-1925 (Supp. 1991). Where there are factual disputes, we give consideration to the fact that the trial court observed the witnesses and accepted one version of the facts over another. See *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991).

We begin our analysis by noting that covenants restricting the use of property are not favored in law. *Egan, supra.* If restrictive covenants are ambiguous, they will be construed in a manner permitting the maximum unrestricted use of the property. *Knudtson v. Trainor*, 216 Neb. 653, 345 N.W.2d 4 (1984).

*Knudtson* was the first Nebraska case to define the meaning and implication of the phrase "single-family dwelling," and in so doing, the court placed heavy reliance on *Sissel v. Smith*, 242 Ga. 595, 250 S.E.2d 463 (1978). The Georgia court held that the words "single-family dwelling" operate as a restriction on the type of building that can be constructed on a lot, but not as a limitation on the type of activity that can take place in the building so constructed.

The Nebraska Supreme Court, in *Knudtson*, was faced with a suit to enjoin the operation of a group home for five mentally retarded persons in a residential subdivision having a restrictive covenant which provided: " '1. No lot shall be used except for

residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling . . . .' " *Knudtson*, 216 Neb. at 654, 345 N.W.2d at 5. The court approved the trial court's conclusions that the house at issue would " 'appear no different than any of the other houses in the neighborhood to any persons passing by' " and, further, that " 'the five women and their houseparents will live together as a family unit.' " *Id*. at 659-60, 345 N.W.2d at 8. As a result, the denial of the injunction was upheld.

Accordingly, we view *Knudtson* as requiring a two-part test when construing a restrictive covenant such as is involved here: (1) whether the *use* of the home was for a residential purpose and (2) whether the *physical structure* on the lot was a single-family dwelling. *Knudtson* defines the following key terms: "residential purpose" refers to the way the property is used and "residential" means a place where people reside, dwell, or make their homes. "Single-family dwelling" refers to the type of building which may be constructed and not to the use of such building. See *Knudtson, supra*.

The district court for Buffalo County interpreted the restrictive language of the covenant involved here to restrict the use of the structure to residential purposes and the use of the lot to a certain type of structure, to wit: a single-family dwelling. This interpretation by the trial court is, in our view, consistent with *Knudtson*.

In applying *Knudtson* to the instant case in our de novo review, we find that at all times the house was used for residential purposes, both by Randolph and her tenants. This is where they lived and made their homes. There was no evidence that any commercial or business transactions were conducted on the premises. The restrictive covenants do not expressly prohibit the leasing for residential purposes of a portion or a share of the structure to unrelated persons, and we must construe the covenant in the least restrictive manner. If appellant association wished to prevent the leasing of space within a residence to unrelated parties, specific covenants could have been adopted. Therefore, in applying the first prong of the test from *Knudtson*, we find no violation of the covenant

concerning Randolph's use of the structure, since it was used for residential purposes.

The second prong of the *Knudtson* test deals with the physical character of the building erected on the lot. We find that the physical structure of the home remained at all times a single-family dwelling, even though there may have been tenants living in the basement. There were no alterations made to the exterior of the home that changed its appearance or character. There was no evidence introduced by appellant association to show that Randolph's house would appear different " 'than any of the other houses in the neighborhood to any persons passing by.' " *Knudtson*, 216 Neb. at 659, 345 N.W.2d at 8. Therefore, we find that Randolph's home remained a single-family dwelling, even though she remodeled the basement so that others could live there and added an entrance from the garage. Clearly, outward appearance is the hallmark of the second prong of the test in *Knudtson*. Here, the alterations and finishing of the basement do not affect the outward appearance of the structure. With respect to the separate entrance constructed in the garage, there is no evidence which this court can use in its de novo review to conclude that adding the entrance was such a substantial change that it would make this home's appearance other than that of a single-family dwelling or outwardly different than the others in the neighborhood. Accordingly, we find no violation of the restrictive covenants.

The appellant also assigned as error the district court's failure to grant appellant's request for attorney fees and costs, due to frivolous pleadings and misconduct by the appellee. Under Neb. Rev. Stat. § 25-824(6) (Reissue 1989), a party who is appearing without an attorney will not be assessed attorney fees unless the court finds that the party clearly knew or reasonably should have known that her actions were frivolous or made in bad faith. Appellee in this case appeared pro se. We find no evidence that the appellee clearly knew or reasonably should have known that her actions were frivolous or made in bad faith.

The decision of the trial court was correct and is hereby affirmed.

AFFIRMED.