767 N.W.2d 518 (2009)
17 Neb. App. 578
ELKHORN RIDGE GOLF PARTNERSHIP, a Nebraska general partnership, et al., appellants and cross-appellees,
v.
MIC-CAR, INC., a Nebraska corporation, and Carville Buttner, appellees and cross-appellants.
No. A-08-1076.
Court of Appeals of Nebraska.
May 5, 2009.
*521 Danny Stoller, pro se.
Barbara Stoller, pro se.
Jeff C. Miller and Duncan A. Young, of Young & White, Omaha, for appellees.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
*522 SIEVERS, Judge.
Elkhorn Ridge Golf Partnership (Elkhorn Ridge), Danny Stoller, and Barb Stoller filed suit against Mic-Car, Inc., and Carville Buttner, seeking a temporary and/or permanent injunction to prevent Mic-Car and Buttner from constructing an apartment building on Lots 93 through 95 in the High Point subdivision in Elkhorn, Nebraska. The district court found in favor of Mic-Car and Buttner but denied their counterclaim against Elkhorn Ridge and the Stollers. We address the issue of the enforcement of two restrictive covenants in the same instrument that are in irreconcilable conflict.

FACTUAL AND PROCEDURAL BACKGROUND
Restrictive covenants against Lots 92 through 103 of the High Point subdivision in Elkhorn had been filed in November 1987. All such lots were replatted and renamed in 1999, but for the sake of clarity, we will use the original lot numbers. Elkhorn Ridge owns Lots 96, 97, and 103 and part of Lot 98. The Stollers own part of Lots 98 and 100 and all of Lot 99. Elkhorn Ridge constructed a golf course on Lot 103. The Stollers constructed their home on Lot 99. In 2005, Mic-Car, whose president, board of directors chairman, and majority stockholder is Buttner, purchased Lots 93 through 95. In 2007, Buttner obtained a building permit issued by the city of Elkhorn for construction of the Elkhorn Apartments, which would cover all three lots owned by Mic-Car. The plans for the Elkhorn Apartments specified that there would be 10 one-bedroom apartments with 752.6 square feet apiece and 8 two-bedroom apartments with 912.9 square feet apiece.
On February 16, 2007, Elkhorn Ridge and the Stollers filed suit against Mic-Car and Buttner, seeking an injunction and alleging that the plans and specifications for the new apartment building they were planning to build did not meet the requirements set forth in the applicable two restrictive covenants. There are two restrictive covenants pertinent to this case. The first paragraph of article III, § 8, of the covenants provides: "Except lots designated in Article IV herein, all lots within the Properties shall be used only for detached single family residences, and not more than one single family dwelling with garage attached shall be erected, altered, placed or permitted to remain on any one of said lots." Article III, § 8, goes on to specify various building restrictions pertaining to telephone and electrical power lines, completion time for construction, height, garages, and setback requirements. This section also includes the following language: "The above ground total finished living area of every multi-family single dwelling shall be not less than 1,250 square feet." (Emphasis supplied.)
Article IV, § 1, of the restrictive covenants provides that "Lots 92 thru 103, inclusive, as shown on the plat, are zoned R3; but no building or structure may be erected thereon exceeding two and one-half stories in addition to basement or garden type apartments." In the R3 zoning designation, the city of Elkhorn allowed apartments.
Mic-Car and Buttner filed an answer and counterclaim, alleging Elkhorn Ridge and the Stollers violated the restrictive covenants by the construction of a clubhouse facility in 2006 on Lots 96 and 97 and part of Lot 98. Elkhorn Ridge and the Stollers' answer to the counterclaim alleged that the counterclaim was barred by waiver, acquiescence, laches, and equitable estoppel. On February 21, 2007, the district court for Douglas County issued an ex parte order, temporarily restraining Buttner from starting construction, but on *523 April 18, the district court issued an order terminating the ex parte order.
Both parties filed motions for summary judgment, which the court heard on August 9, 2007. The case was submitted to the court on affidavits and exhibits offered by the parties at the injunction hearing and at the August 9 hearing. The parties stipulated that the motions for summary judgment were to be ruled upon, which ruling would be the final order in the case. The court issued its order on August 31, finding that the covenant in article III, § 8, of the building restrictions was unambiguous and, therefore, not subject to interpretation or construction by the court and that the lots owned by Mic-Car and Buttner were not subject to the restrictions found therein. The court also found that the restrictive covenants found in article IV did apply to the lots owned by Mic-Car and Buttner, but that the building plans offered by Mic-Car and Buttner complied with such. The court denied the motion for summary judgment by Elkhorn Ridge and the Stollers and denied Mic-Car and Buttner's motion for summary judgment on their counterclaim. The court further granted Mic-Car and Buttner's motion for summary judgment as to the allegations in Elkhorn Ridge and the Stollers' complaint.
Elkhorn Ridge and the Stollers appealed to this court, case No. A-07-990, but on July 1, 2008, we dismissed the case for lack of jurisdiction because the order was not a final order due to unresolved issues on the counterclaim. On September 18, the parties submitted another stipulation to the trial court withdrawing their respective motions for summary judgment, submitting the case on the exhibits previously received by the court, and asking the court to decide all issues raised via the complaint, answers, and counterclaim. The district court then issued a final order on September 22, finding that Elkhorn Ridge and the Stollers failed to meet their burden of proof on their original claim and that Mic-Car and Buttner failed to meet their burden of proof on the counterclaim. Judgment was entered in favor of Mic-Car and Buttner, and Elkhorn Ridge and the Stollers' complaint was dismissed with prejudice. Judgment was also entered in favor of Elkhorn Ridge and the Stollers on Mic-Car and Buttner's counterclaim, and such counterclaim was likewise dismissed with prejudice. In short, the trial court approved the construction of the proposed apartment building. Elkhorn Ridge and the Stollers timely appealed that order, and Mic-Car and Buttner cross-appeal.

ASSIGNMENTS OF ERROR
Elkhorn Ridge and the Stollers assign as error that the district court (1) failed to sustain their objection to exhibit 13; (2) failed to sustain their objection to exhibit 15; (3) found that the general building restrictions in article III, § 8, did not apply to Mic-Car and Buttner's lots; and (4) found that the plans for Mic-Car and Buttner's apartment building did not violate the covenant limiting a building to 2½ stories in addition to basement or garden-type apartments. In their cross-appeal, Mic-Car and Buttner assign as error that the district court (1) admitted exhibit 10 into evidence and (2) ruled that Elkhorn Ridge's use of Lots 96 through 98 did not violate the restrictive covenants.

STANDARD OF REVIEW
An action to enjoin a breach of restrictive use covenants is equitable in nature. 1733 Estates Assn. v. Randolph, 1 Neb.App. 1, 485 N.W.2d 339 (1992). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, *524 provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Harders v. Odvody, 261 Neb. 887, 626 N.W.2d 568 (2001).
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules. State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006). Judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Id. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. Id. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Coral Prod. Corp. v. Central Resources, 273 Neb. 379, 730 N.W.2d 357 (2007).

ANALYSIS

Admission of Exhibits 13 and 15.
Exhibit 13 is the affidavit of a licensed real estate agent. The affidavit contained the agent's opinion that the area surrounding the lots in question was of mixed use and that construction of the Elkhorn Apartments would not diminish the value, integrity, character, or use of the lots owned by Elkhorn Ridge and the Stollers. Such exhibit was offered at the summary judgment hearing on August 9, 2008, after this court remanded the cause to the trial court. Elkhorn Ridge and the Stollers objected to this exhibit on the ground that it was irrelevant. The objection was overruled, and exhibit 13 was received by the court.
Elkhorn Ridge and the Stollers argue that exhibit 13 is not relevant, because a party seeking an injunction is not required to show actual damage or irreparable harm. Where there has been a breach of a restrictive covenant, it is not necessary to prove that the injury will be irreparable in order to obtain injunctive relief. Breeling v. Churchill, 228 Neb. 596, 423 N.W.2d 469 (1988). It is a well-defined exception to the general rule requiring a showing of actual and substantial injury as a basis for entitlement to injunctive relief, that, where one who has entered into a restrictive covenant as to the use of the land commits a distinct breach thereof, he may be enjoined irrespective of the amount of damage caused by his breach, and even if there appears to be no substantial monetary damage. Wessel v. Hillsdale Estates, Inc., 200 Neb. 792, 266 N.W.2d 62 (1978).
However, exhibit 13 also describes the nature of the neighborhood, listing various surrounding uses, and includes an opinion not only about the impact on the value of the surrounding lots, but also about the impact of the construction of Elkhorn Apartments on the character, integrity, or use of surrounding lots.
A restrictive covenant is to be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it; the location and character of the entire tract of land; the purpose of the restriction; whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers; and whether it was in pursuance of a general building plan for the development of the property.
Lund v. Orr, 181 Neb. 361, 363, 148 N.W.2d 309, 310-11 (1967). Because exhibit *525 13 contains reference to the character of the neighborhood and surrounding circumstances, we find that the district court did not abuse its discretion in admitting exhibit 13 even though evidence of actual damages or irreparable harm is not required to show a breach of a restrictive covenant. We assume the trial court ignored the irrelevant portions of the exhibit, as do we in our de novo review.
Exhibit 15 is the affidavit of the attorney for Mic-Car and Buttner, which affidavit included a portion of the court reporter's transcription of the proceedings held on April 2, 2007, when the court heard arguments on the issuance of a temporary injunction to halt construction of Elkhorn Apartments. Elkhorn Ridge and the Stollers objected to this exhibit on the ground that it was irrelevant. The court overruled this objection and received exhibit 15. Because the Stollers were appearing pro se, portions of the exhibit may well be relevant as admissions. Again, we assume that the trial court ignored the irrelevant portions. However, the exhibit is not relevant to our analysis in our de novo review, and thus we simply assume it was error to admit it, but such is of no consequence in this appeal. Thus, any claimed error is harmless.

Article III, § 8, and Article IV, § 1.
Elkhorn Ridge and the Stollers argue that the court erred in determining that the provisions in article III, § 8, of the restrictive covenants did not apply to the Elkhorn Apartments. Article III, § 8, of the restrictive covenants provides: "Except lots designated in Article IV herein, all lots within the Properties shall be used only for detached single family residences, and not more than one single family dwelling with garage attached shall be erected, altered, placed or permitted to remain on any one of said lots." Elkhorn Ridge and the Stollers also argue that the court erred in determining that the plans for the Elkhorn Apartments satisfied the provisions set out in article IV, § 1, of the restrictive covenants. Article IV, § 1, of the restrictive covenants states that "Lots 92 thru 103, inclusive, as shown on the plat, are zoned R3; but no building or structure may be erected thereon exceeding two and one-half stories in addition to basement or garden type apartments."
The two provisionsarticle III, § 8, and article IV, § 1are inconsistent and in irreconcilable conflict with each other. Article III, § 8, addresses all lots within the subdivision, Lots 92 through 103, and it provides that "single family residences" must be built thereupon. However, article III, § 8, begins by stating, "Except lots designated in Article IV." And article IV allows 2 ½-story apartment buildings. Thus, article III, § 8, excludes from its restrictions those lots designated in article IV, upon which lots 2½-story apartment buildings may be built. In other words, when read together, article III, § 8, and article IV effectively cancel each other. Thus, while the language of the two articles under consideration is clear and unambiguous when read separately, we must read the instrument containing the covenants as a whole, and when doing so, the two provisions hopelessly conflict. See, Breeling v. Churchill, 228 Neb. 596, 423 N.W.2d 469 (1988); Ross v. Newman, 206 Neb. 42, 291 N.W.2d 228 (1980); Pool v. Denbeck, 196 Neb. 27, 241 N.W.2d 503 (1976) (covenants to be read and construed as whole). In saying that the two articles are clear and unambiguous when read separately, we ignore the fact that article III, § 8, generally requires "single family residences" on the lots but has a minimum square footage requirement on "multi-family single dwelling[s]." Frankly, we must concede that we do not know *526 what a "multi-family single dwelling" might be or what was intended by this term. Counsel, upon questioning at oral argument, were not able to convincingly enlighten us. And, a thorough search did not turn up a single published case, state or federal, in which this term was used. However, given the result we reach, thankfully, we do not have to assign a meaning to the phrase "multi-family single dwelling."
We conclude that the conflicting provisionsarticle III, § 8, and article IVdo not make the covenants ambiguous under Nebraska law, because under the well-known definition of ambiguity, we cannot find two reasonable but conflicting interpretations of the interplay between the two covenants. See Baker's Supermarkets v. Feldman, 243 Neb. 684, 502 N.W.2d 428 (1993) (instrument is ambiguous when it is susceptible of at least two reasonable but conflicting interpretations or meanings). Thus, we do not construe, in the typical sense of the word as used by courts, the covenants at issue, but, rather, we turn to the general law concerning the reach of covenants restricting the use of land. See Knudtson v. Trainor, 216 Neb. 653, 655, 345 N.W.2d 4, 6 (1984) (when considering restrictive covenant, court should keep in mind that "covenants which restrict the use of land are not favored by the law, and, if ambiguous, they should be construed in a manner which allows the maximum unrestricted use of the property"). Moreover, under no circumstances shall restrictions on the use of land be extended by mere implication. Boyles v. Hausmann, 246 Neb. 181, 517 N.W.2d 610 (1994). From this authority, we conclude that to the extent that article III, § 8, prohibits construction of an apartment building on Lots 93 through 95, the restriction is simply unenforceable, and of no force and effect. While a reasonably exhaustive search has failed to turn up an appellate decision, state or federal, with like facts involving two conflicting covenants, we believe our holding necessarily follows from the law disfavoring restrictive covenants, including the cited Nebraska precedent. Thus, we hold that when provisions within an instrument imposing restrictive covenants irreconcilably conflict, the provision that allows the broadest use of the land will apply. Accordingly, the proposed apartment building is not prohibited by article III. However, the limitation that such building cannot be more than 2 ½ stories in height found in article IV is valid and enforceable. Accordingly, we turn to the argument that the proposed apartment building violates this restriction.

Article IV, § 1.
Article IV, § 1, clearly applies to the apartments proposed by Mic-Car and Buttner and restricts what can be built to 2½ stories plus basement or garden apartments. Elkhorn Ridge and the Stollers argue that the Elkhorn Apartments are three full stories above grade and that as such, the building exceeds the foregoing height limitation. There is considerable evidence, however, that Elkhorn Apartments is a 2½-story building because the lowest floor is considered a basement and not a story "above grade plane." Four individuals testified to this fact. The Elkhorn building inspector testified that for the purposes of the Elkhorn building code, the building qualifies as a 2½-story building because the plans called for dirt to be placed up against the side of the first floor for more than 50 percent of the building. An architect testified that pursuant to the 1985 and 1988 Uniform Building Codes and the 2003 International Building Code, the lowest level of the Elkhorn Apartments qualifies as a garden floor or basement because the finished floor level directly above the garden floor is less than 5 feet 10 inches above grade plane, and that to qualify as a first story, the finished floor *527 level would have to be more than 6 feet above grade plane. A civil engineer with a consulting firm in Omaha agreed that under the 2003 International Building Code, the garden level of the Elkhorn Apartments does not qualify as a story above grade plane, but, rather, qualifies as a basement. A community planner testified that the proposed building qualifies as a 2½-story building because its maximum height is less than 35 feet, which is the height prescribed as the maximum height for a 2½-story building in Elkhorn's zoning regulations. There is no evidence in the record that the proposed apartment building is in fact a three-story building according to the various applicable building codes. Thus, we find that the Elkhorn Apartments clearly meet the requirements set out in the restrictive covenant found in article IV, § 1.

Cross-Appeal: Admission of Exhibit 10.
Exhibit 10 is the affidavit of a high school English teacher for Elkhorn Public Schools. In her affidavit, she sets forth her opinion as to how the language in the covenant in article III, § 8, should be interpreted. Exhibit 10 was received by the court over an objection on the grounds that the affiant was not a qualified expert and that the subject of the affidavit was not a proper subject for her testimony. The cross-appeal challenges the admission of this affidavit, but given the result we have reached above, we need not decide this issue. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. Spanish Oaks v. Hy-Vee, 265 Neb. 133, 655 N.W.2d 390 (2003).

Cross-Appeal: Elkhorn Ridge's Compliance

With Other Covenants.
Mic-Car and Buttner argue that the district court erred in finding that Elkhorn Ridge had not violated the restrictive covenants as to Lots 96 through 98. The only evidence in the record to establish a potential violation of the restrictive covenants by Elkhorn Ridge and the Stollers in their use of their lots is exhibit 14, an affidavit from Buttner. In it, he states that Lots 96 and 97 and part of Lot 98 are used for facilities, structures, and uses associated with a commercial golf course, including a parking lot, a storage building, outside storage of materials, a dumpster, fuel tanks, and other outdoor equipment storage. We are not persuaded that such use, either originally or as a result of the new construction in 2006, constitutes a breach of the restrictive covenants upon such lots. Article III, § 1, specifically states that lots shall be used only for residential purposes and not business, professional, trade, or commercial purposes, except that this prohibition does not apply to a clubhouse or other necessary structure used in connection with the golf course on Lot 103. Based upon the clear and unambiguous language of this provision in the restrictive covenants, applicable to Lots 96 through 98, we find that the current uses of those three lots as described by Buttner in exhibit 14 do not violate the restrictive covenants. The uses described are all related and necessary for the operation of the golf course on Lot 103, and therefore, the prohibitions in article III, § 1, do not apply to such use. We find Mic-Car and Buttner have failed to show that Elkhorn Ridge has violated any applicable covenant, and therefore, we find this assignment of error lacks merit.

CONCLUSION
Although upon different reasoning, we affirm the ruling of the district court. The restrictive covenant found in article III *528 does not apply to the Elkhorn Apartments described herein, and the covenant in article IV, § 1, does apply, but is not violated by the proposed apartment building. Finding no breach of either restrictive covenant, we find in favor of Mic-Car and Buttner on these claims. As to the cross-appeal alleging improper use of Lots 96 through 98 by Elkhorn Ridge, we find such claim lacks merit, because the current use does not violate any applicable restrictive covenant.
AFFIRMED.