Sheri for premiums paid during the pendency of the dissolution proceeding or after trial.

We find no abuse of discretion in the duration of the district court's alimony award or in its award of $10,000 in attorney fees to Sheri.

Affirmed as modified.

———————

Sam Grimminger and Kay Grimminger, appellants,
v. James Mudloff, appellee.
___ N.W.2d ___

Filed September 17, 2013.     No. A-12-1000.

1.  **Actions: Restrictive Covenants: Equity.** An action to enjoin a breach of restrictive use covenants is equitable in nature.
2.  **Equity: Appeal and Error.** In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3.  **Restrictive Covenants: Intent.** Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants.
4.  **Restrictive Covenants.** If the language of a restrictive covenant is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction.
5.  ____. Restrictive covenants are not favored in the law and, if ambiguous, should be construed in a manner which allows the maximum unrestricted use of the property.
6.  **Contracts.** An ambiguity exists when the instrument at issue is susceptible of two or more reasonable but conflicting interpretations or meanings. Moreover, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.
7.  **Restrictive Covenants: Words and Phrases.** A dwelling is a structure in which a person lives or that has been designed for living.
8.  ____: ____. The term "residential" prohibits the affected real property from being utilized for commercial purposes.

Appeal from the District Court for Howard County: Karin L. Noakes, Judge. Affirmed.

Sam Grimminger, pro se, and for appellant Kay Grimminger.

David T. Schroeder for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

Sam Grimminger and Kay Grimminger, lot owners in the Lake of the Woods subdivision, filed suit for an injunction in the district court for Howard County against James Mudloff, another lot owner in the subdivision. The Grimmingers contended that Mudloff's use of his lot and construction of a detached garage structure violated the subdivision's restrictive covenants. Following trial, the district court entered judgment in favor of Mudloff. The Grimmingers challenge the district court's conclusions that Mudloff's detached garage structure was not a dwelling structure and did not violate the "residential lot" designation contained in the covenants. Finding no error, we affirm.

## FACTUAL BACKGROUND

*Restrictive Covenants.*

On December 11, 1980, a document entitled "Restrictive Covenants for Lake of the Woods Subdivision" was recorded in the office of the register of deeds for Howard County, Nebraska. These covenants apply to all real property in the Lake of the Woods subdivision. Since their adoption and recording in 1980, these covenants have been amended various times. For purposes of this appeal, the latest amendment to these covenants was recorded on August 31, 2007.

Included in these restrictive covenants are three particular provisions that are at issue in this case: (1) a "residential lot" covenant, (2) a "building specifications" covenant, and (3) a "law suit" covenant. The "residential lot" covenant states that "[a]ll lots in [the] Subdivision shall be known and described as Residential lots." The "building specifications" covenant contains various building specifications to which lot owners are required to comply, the pertinent part of which states:

No dwelling structure, garage or other incidental building shall be built with scrap lumber, but all

dwellings shall be completed within one (1) year of the date commenced. No dwelling structure shall be considered complete until it has at least one floor of living space. No dwelling unit shall have less than 1100 square feet of living space above ground, shall have at least a 5/12 roof pitch, shall conform to the Howard County Building Regulations, and shall be set on a permanent foundation with permanent utility connection. Living space shall not include garage, breezeway or open or enclosed porches. Mobile Homes will not be permitted. All new construction will be approved by an architectural committee comprised of from five to seven lot owners selected by a majority of the lot owners of all lots in the subdivisions.

Finally, each lot owner in the subdivision is permitted by the "law suit" covenant to personally file suit to enforce these covenants.

*Mudloff's Lot.*

On October 24, 2008, Mudloff acquired a lot in the Lake of the Woods subdivision. At the time he purchased this lot, Mudloff was aware that it was subject to the recorded restrictive covenants. Sometime in May 2009, Mudloff submitted plans to build two buildings on the lot. One building was a proposed 44- by 77-foot house with an attached garage. The other proposed building was a 24- by 30-foot detached garage. The architectural committee approved these plans.

Having received the architectural committee's approval for his plans, Mudloff began construction on the detached garage in May 2009. This building is attached to a permanent foundation and is connected to a septic tank and leachfield that are large enough to support additional facilities. The building is 720 total square feet and is separated into distinct parts. One part is 408 square feet, is unfinished, and is used to store Mudloff's all-terrain vehicle, riding lawnmower, and golf cart, along with other outdoor items. The other part of the building is 312 square feet and is partially carpeted and partially covered in linoleum. This part contains a sink, cabinetry, and an enclosed half bath. The completed structure has running

water, indoor plumbing, a permanent utility connection, electrical outlets, heating and cooling, and an attached wood deck. According to Mudloff, construction of this building was completed in October 2009.

Although Mudloff's approved plans contained two proposed buildings, he has built only the detached garage. Sometime later, the Grimmingers became aware that Mudloff had completed only the detached garage structure and had not taken steps to construct the accompanying house. While he was a member of the board of the Lake of the Woods Property Owners Association, Sam sent Mudloff letters requesting his attendance at a board meeting for the purpose of discussing Mudloff's construction plans and timelines. When Mudloff had not begun construction on his proposed home a year after these letters, the Grimmingers determined that he had violated the covenants and retained legal representation to enforce the covenants. The Grimmingers believed that Mudloff's structure did not conform to the restrictive covenants because it did not contain the minimum square footage and did not have the compliant "5/12 roof pitch." On July 14, 2011, the Grimmingers, exercising their rights to personally sue to enforce the subdivision's covenants, filed a complaint in the district court for Howard County seeking an injunction against Mudloff.

*Trial.*

On September 26, 2012, trial was held on the Grimmingers' complaint. At trial, Sam testified that he believed the covenants did not allow a lot owner to build a garage on a lot unless there was an accompanying residence. Sam stated that if Mudloff's building was permitted to remain, the covenants would effectively be rendered nonexistent.

Mudloff testified that he believed his structure, as constructed, did not violate the covenants. Mudloff stated that his structure was not a dwelling and that he did not utilize it as a dwelling. Photographs of the finished part of the structure show that it contains a lawnmower, a grill, stacked lawn chairs, a table, and various tools. Mudloff continues to reside in St. Paul, Nebraska. According to Mudloff, the covenants

do not require a house to be constructed on a lot in order for the lot to conform to the covenants. Despite this position, Mudloff testified that he intends to build his proposed house and would do so as soon as other circumstances in his life permitted.

A member of the subdivision's architectural committee testified that Mudloff's current use of his lot did not violate the covenants.

*District Court Order.*

The district court issued its order on September 28, 2012, ruling that Mudloff's structure did not violate the covenants. In its findings, the district court concluded that the facts are largely undisputed and turned to an analysis of whether Mudloff's structure was a "dwelling" in violation of the covenants and whether the covenants' designation of the phrase "residential lots" prohibits the construction of such a building without a residence having first been built. Because the covenants did not define the term "dwelling," the court referred to Black's Law Dictionary, which generally defined the word "dwelling" as a house or other structure in which a person lives. Applying that definition to Mudloff's garage structure, the court determined that because Mudloff did not live in the structure, it could not be considered a dwelling and, therefore, did not violate the covenants as they relate to dwelling structures.

The district court also considered whether Mudloff violated the covenants because he had not built a residence on his lot. The court found that although the covenants designated all lots in the subdivision as "residential lots," there was no definition of the phrase "residential lot" in the covenants. The court determined that a residential lot is commonly intended for use as a private residence or dwelling and is not utilized for commercial purposes, which would certainly prohibit building and operating a business on the lots and prohibit construction of buildings that would interfere with the residential use of the lots. Concluding that Mudloff was intending to use the lot for a residence and that the detached garage did not prevent later construction of a residence or contradict the residential nature of the lot or subdivision, the court found that the covenants

had not been violated and dismissed the Grimmingers' complaint. The Grimmingers appeal from this order.

## ASSIGNMENTS OF ERROR

Although the Grimmingers assign six errors, the argument section of their brief reveals that these six errors can be condensed into two. The Grimmingers contend the district court erred in (1) determining that Mudloff's detached garage was not a dwelling structure and (2) determining that Mudloff did not violate the "residential lot" designation contained in the covenants.

## STANDARD OF REVIEW

[1,2] An action to enjoin a breach of restrictive use covenants is equitable in nature. *Elkhorn Ridge Golf Partnership v. Mic-Car, Inc.*, 17 Neb. App. 578, 767 N.W.2d 518 (2009). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

[3-5] We begin our analysis of this case by reviewing some well-established law relating to restrictive covenants. Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants. *Southwind Homeowners Assn. v. Burden*, 283 Neb. 522, 810 N.W.2d 714 (2012). If the language is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction. *Id.* However, restrictive covenants are not favored in the law and, if ambiguous, should be construed in a manner which allows the maximum unrestricted use of the property. *Id.*

[6] An ambiguity exists when the instrument at issue is susceptible of two or more reasonable but conflicting interpretations or meanings. Moreover, the fact that the parties have

suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

*Should Mudloff's Detached Garage Be*
*Considered Dwelling Structure?*

The Grimmingers contend that Mudloff's detached garage is a dwelling structure that violates the covenants. They argue that because this building contains many amenities that are typically found in a standard residence, such as running water, heating and cooling, a half bath, and carpeted floors, the district court should have considered it a dwelling. The Grimmingers also contend that the district court should not have given weight to Mudloff's testimony that he does not use the building as a dwelling. Finally, because this building does not comply with the requirements in the covenants in terms of its square footage and roof pitch, the Grimmingers argue that the district court should have granted their requested injunctive relief.

The parties have not cited, nor have we discovered in our research, any Nebraska case providing a definition of "dwelling structure." However, the term "dwelling" is defined in various Nebraska statutes. For the sake of brevity, we list only three such occurrences. In the criminal law statutes, "[d]welling" is defined as "a building or other thing which is used, intended to be used, or usually used by a person for habitation." Neb. Rev. Stat. § 28-109(9) (Reissue 2008). See, also, Neb. Rev. Stat. § 28-1406(5) (Reissue 2008) ("[d]welling shall mean any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging"). The Nebraska Fair Housing Act defines "[d]welling" as "any building, structure, or portion thereof which is occupied as or designed or intended for occupancy as a residence for one or more families . . . ." Neb. Rev. Stat. § 20-310 (Reissue 2012). In Nebraska's Uniform Residential Landlord and Tenant Act, "[d]welling unit" is defined as "a structure or the part of a structure that is used as a home, residence, or sleeping place by one person

who maintains a household or by two or more persons who maintain a common household." Neb. Rev. Stat. § 76-1410(3) (Reissue 2009).

More general resources contain similar definitions for dwelling. According to Black's Law Dictionary 582 (9th ed. 2009), a "dwelling-house" is defined as "[t]he house or other structure in which a person lives; a residence or abode." Black's Law Dictionary also notes that the term "dwelling-house" is commonly shortened to "dwelling." This legal definition of "dwelling-house" closely relates to the common definition of dwelling. See Merriam-Webster's Collegiate Dictionary 360 (10th ed. 2001) (defining "dwelling" as "a shelter (as a house) in which people live").

[7] Although the definitions of "dwelling" cited above vary in their language, it is clear that a dwelling is a structure in which a person lives or that has been designed for living. Both parties essentially agree with this definition, but they dispute whether Mudloff's structure should be considered a dwelling. Upon our de novo review of the record, we conclude that the detached garage structure at issue in this case, although containing various amenities that are commonly found in a dwelling, cannot be considered a dwelling. The part of the structure that is finished is 312 square feet, which includes a separate half bath with a sink and toilet, and some cabinetry, a sink, and a refrigerator in the main area. The main area, which is partially carpeted, serves as additional storage for a lawnmower, a grill, stacked lawn chairs, and a table. Mudloff does not live in this structure, but, rather, maintains a house in St. Paul as his permanent residence. Mudloff testified that his detached garage structure was not designed for living and could not be utilized for living because it did not contain a shower or bathtub, a stove, or a bed.

Having found that the detached garage structure in this case is not a dwelling, we conclude that it does not violate restrictive covenants. The covenants specify that "dwelling units" must have a "5/12 roof pitch" and at least "1100 square feet of living space above ground." However, because this detached garage is not a dwelling, it is not subject to these restrictions. This assigned error is without merit.

*Does Mudloff's Current Use of His Lot*
*Violate Covenants' Residential*
*Lot Designation?*

As stated above, the covenants state that all lots in the Lake of the Woods subdivision are to be classified as "residential lots." The Grimmingers argue that allowing Mudloff's current use of his lot would subvert the intent and purpose of the covenants. They fear that if Mudloff is permitted to use his lot in its current state, many other substandard structures would also be allowed in the subdivision.

[8] The restrictive covenants do not contain any definition of the phrase "residential lot" in the recorded instrument or subsequent amendments. However, the Nebraska Supreme Court has had occasion to consider restrictive covenants containing similar language. In *Reed v. Williamson*, 164 Neb. 99, 104, 82 N.W.2d 18, 22 (1957), the Supreme Court construed the meaning of a restrictive covenant which provided that "'[n]o lot shall be used except for residential purposes.'" Determining that the term "residential" prohibited the affected real property from being utilized for commercial purposes, the Supreme Court held that the proposed use of the affected property for the production of oil and gas would violate the covenants. See *id.*

In *Lake Arrowhead, Inc. v. Jolliffe*, 263 Neb. 354, 356, 639 N.W.2d 905, 908 (2002), the Nebraska Supreme Court construed a restrictive covenant which provided that "'[a]ll lots shall be used as residential lots except Lot 1, Block 14, which may be used for commercial use.'" Adopting the meaning of "residential" from *Reed v. Williamson, supra*, the Supreme Court concluded that the defendant's use of his lot inside the subdivision for the purpose of accessing property outside the subdivision did not disturb the residential designation in the restrictive covenants. *Lake Arrowhead, Inc. v. Jolliffe, supra.*

We adopt and apply the Supreme Court's conclusion as to the meaning of "residential" in our analysis of these covenants. Having done so, we determine that Mudloff's current use of his lot does not violate the covenants. There is no evidence in the record that Mudloff has used his lot for any commercial

purpose. Additionally, and contrary to the Grimmingers' assertions, there is nothing in the covenants that affirmatively requires a lot owner to construct a residence on his or her lot before building any incidental structure in order to be in compliance with the residential designation. If the subdivision wished to preclude a lot owner from constructing this type of structure before constructing a residence, more specific covenants could have been drafted.

Accordingly, we find no violation of the restrictive covenants and determine this error to be without merit.

## CONCLUSION

Having determined that Mudloff's detached garage structure and current use of his lot do not violate the restrictive covenants, we affirm the district court's decision.

AFFIRMED.